# UNITED STATES DISTRICT COURT

__NORTHERN__    DISTRICT OF ___ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

KENYATTA COOPER

FILED

12·6·07    NA

DEC 0 6 2007

12-6-07

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**MAGISTRATE JUDGE NOLAN**

**CRIMINAL COMPLAINT**

CASE NUMBER: **806**

07CR 806

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my

knowledge and belief.  On or about __May 17, 2007,__ in __Cook__ county, in the __Northern__ District of __Illinois__ defendant:

knowingly and intentionally distributed a controlled substance, namely in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance;

in violation of Title __21__ United States Code, Section __841(a)(1)__.

I further state that I am a __Special Agent of the Bureau of Alchohol, Tobacco, Firearms and Explosives__ and that this complaint is based on the following facts:

PLEASE SEE ATTACHED

Continued on the attached sheet and made a part hereof: __X__ Yes   ____ No

X _Cindy M. Bernd_ #4307

Cindy M. Bernd
Special Agent
Bureau of Alchohol, Tobacco, Firearms and Explosives

Sworn to before me and subscribed in my presence,

__December 6, 2007__
Date

at __Chicago, Illinois__
City and State

__Nan R. Nolan, U.S. Magistrate Judge__
Name & Title of Judicial Officer

_Nan R. Nolan_
Signature of Judicial Officer

## AFFIDAVIT

I, Cindy M. Bernd, being duly sworn, depose and state:

1.      I have been a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since September 2001.  In connection with my official duties, I have received training in and have investigated federal criminal violations.  Specifically, I completed both Criminal Investigator and New Professional Training Schools at the Federal Law Enforcement Training Center in Glynco, Georgia.  I also have attended classes and seminars sponsored by ATF. Prior to becoming an SA with ATF, I was employed as a United States Customs Inspector, and received Basic Inspector training at the Federal Law Enforcement Training Center in Glynco, Georgia.

2.      I am familiar with the facts and information contained in this affidavit from my own personal observations, witness interviews, surveillance, review of consensually recorded conversations, analysis and review of documents and records, and discussions with other law enforcement agents and officers involved in this investigation.  Because this affidavit is submitted solely for the purpose of establishing probable cause in support of a criminal complaint, the information contained herein is described in summary form and is not every fact known to me regarding this investigation.  Where statements of others are set forth in this affidavit, they are set forth in substance and in part, and are not verbatim.  Statements from recorded conversations do not include all statements or topics covered during the course of the recorded conversation, and are not taken from a final transcript.

3.      I have been conducting an investigation regarding alleged violations of the federal narcotics trafficking laws, specifically 21 U.S.C. §841(a)(1), by Kenyatta COOPER.  As described

1

below, this investigation has involved two separate distributions of crack cocaine by COOPER. Based on the information contained in this affidavit, I submit that there is probable cause to believe that on or about May 17, 2007, Kenyatta COOPER distributed in excess of 50 grams of cocaine base in the form of crack cocaine, in violation of 21 U.S.C. §841(a)(1).

*The March 23, 2007 Transaction*

4.      On or about March 6, 2007, ATF received information from a cooperating individual ("CI")[1], who stated that he/she knew an individual named Kenyatta COOPER, and also known to him/her as "Yaya." According to the CI, Kenyatta COOPER sold crack cocaine in and around the area of 79th Street and Coles in Chicago, Illinois. According to the CI, COOPER is a member of the Gangster Disciple Street Gang. ATF showed the CI a known photograph of Kenyatta COOPER, and the CI positively identified the male depicted in this photograph as the person he/she knew as Kenyatta COOPER and "Yaya." According to the CI, he/she and COOPER had discussed an exchange of approximately 2 1/4 ounces of crack cocaine for approximately $1,300.00 several days before March 6, 2007.

5.      On or about March 13, 2007, the CI placed a telephone call to COOPER and left a message asking for COOPER to call the CI back. ATF monitored, but did not record, this telephone message. According to the CI, on or about March 13, 2007, COOPER called him/her back, and discussed meeting the next day, on or about March 14, 2007, for the purchase of 2 1/4 ounces of

---

[1]The CI pled guilty to federal charges involving the distribution of cocaine base in the form of crack cocaine. The CI entered into a plea agreement governed by Fed. R. Crim. P. 11(c)(1)(C) in which the government has agreed to move the sentencing court pursuant to USSG 5K1.1 and 18 USC s. 3553(e) to impose a sentence of one-half of the applicable sentencing guidelines, or one-half of the statutory minimum sentence, whichever is greater, and the CI has agreed to provide truthful information and testimony. The CI has provided reliable information in connection with another prosecution involving crack cocaine.

crack cocaine. This conversation was not monitored or recorded by ATF. According to the CI, a March 14, 2007, meeting did not take place.

6.      Instead, on March 22, 2007, the CI placed a telephone call to COOPER. ATF monitored, but did not record, this telephone call. The CI told COOPER that a co-worker wished to purchase "four and something," a reference to 4 1/2 ounces of crack cocaine. COOPER responded "okay," and COOPER agreed to call the CI the next day.

7.      On March 23, 2007, the CI placed an unrecorded call to COOPER and left a message. Approximately 30 minutes later, COOPER called the CI. This call was not recorded, but ATF monitored this phone call. The CI and COOPER agreed to meet on Carpenter Street, a street behind a gas station located near the intersection of I-57 and Halsted Avenue in Chicago.

8.      On March 23, 2007, an ATF Special Agent, acting in an undercover capacity ("UC"), accompanied the CI to meet with COOPER on Carpenter Street. The UC wore a recording device during the transaction, and remained in the drivers' seat while parked in an undercover government vehicle. Prior to the meeting with COOPER, agents, including the UC, met with the CI and searched him for contraband with negative results.

9.      At the Carpenter Street location, the UC observed a gray Dodge mini-van, with Illinois license plate 955 4311 arrive. According to the records of the Illinois Secretary of State, this license plate is registered to Kenyatta COOPER, 6647 S. Lawrence, 2nd Floor, Chicago, Illinois, 60637. The UC provided $2,600 in ATF funds to the CI, and observed the CI get out of the UC's car, walk to the mini-van and get into the mini-van. After a few minutes, the CI returned to the UC's car and gave the UC a package containing suspect crack cocaine. According to the UC, the suspect crack cocaine was a rocky, chunk-like substance and was consistent with the UC's understanding

3

of crack cocaine. The suspect crack cocaine was later tested and weighed by the DEA Forensic

Laboratory, and determined to be cocaine base with a net weight of 123.6 grams.

10.    According to the CI, after he/she entered the mini-van, he/she provided the $2,600

to COOPER, who handed the CI the suspect crack cocaine.

*The May 17, 2007 Transaction*

11.    On or about May 16, 2007, the CI placed a recorded telephone call to COOPER.[2] The

CI stated words to the effect of he/she was "ready." COOPER responded that he was as well, and

asked the CI words to the effect of whether the CI's co-worker was aware of the new price of "three

dollars," a reference to $3,000.00 for 4 1/2 ounces of crack cocaine. The CI stated words to the

effect that the co-worker was aware of the price. COOPER told the CI to call him the next day, May

17, 2007, to arrange where to meet.

12. On or about May 17, 2007, the CI placed a recorded call to COOPER. The CI told

COOPER that he/she and his/her co-worker were leaving downtown and going to the CI's house.

COOPER asked the CI words to the effect "if he had had that with him," referring to whether the

CI's co-worker had the money. The CI said that the co-worker did. COOPER told the CI that

COOPER would meet them at the CI's house.

13. An ATF Special Agent, acting in an undercover capacity ("UC"), accompanied the CI

to meet with COOPER at the CI's house. Prior to the meeting, agents, including the UC, met with

the CI and searched him/her for contraband with negative results. The UC placed a video recording

device on the CI.

---

[2]The voice identification of COOPER is based upon the identification by the CI and an
ATF agent comparison of the audio and video recording of the May 17, 2007 summarized in
paragraph 17 below and the May 16, 2007 telephone recording.

14. While the UC and the CI were waiting at the CI's house, the CI called COOPER and asked him where he was. The CI's recording device recorded the CI's half of this conversation, but did not pick up the other half of the conversation. According to the CI, COOPER said that the CI lived too close to the police station and suggested meeting at a gas station at 76th Street off of I-90/94 in Chicago, Illinois.

15. The UC and the CI drove to the Mobil gas station at the corner of 76th and State Streets in an undercover red Mustang. COOPER called the CI to say that he had missed the 76th Street exit and would have to go further north and then turn around. An ATF agent who was conducting surveillance of the area saw a charcoal gray BMW, facing southbound on Lafayette Street stopped at the stoplight at 75th Street. The ATF agent identified the driver of the car as COOPER based on a Chicago Police Department (CPD) CLEAR Data Warehouse photograph of COOPER. The ATF agent followed COOPER to the Mobil gas station where COOPER met with the UC and the CI.

16. At approximately 6:14 pm, the UC saw a gray BMW with large chrome rims pull into the gas station. This car matched the description that the CI had previously given to the UC. The UC asked the CI if the driver of the BMW was COOPER and the CI said that it was. The UC also identified the driver as COOPER based on the CPD CLEAR Data Warehouse photograph.

17. The UC gave the CI $3200.00 in U.S. Currency. The CI got out of the UC's car and got into the front passenger seat of the gray BMW. According to the CI, the CI gave COOPER the money and COOPER gave the CI 4 1/2 ounces of suspect crack cocaine. The video and audio from the CI's recording does not clearly depict the transaction in the interior of the BMW. The CI returned to the UC's car and put the suspect crack cocaine in the car's center console. According to the UC, the suspect crack cocaine was a rocky, chunk-like substance and was consistent with the

5

UC's understanding of crack cocaine. The suspect crack cocaine was later tested and weighed by the DEA Forensic Laboratory and determined to be cocaine base with a net weight of 124.3 grams.

18.  ATF agents arrived at the Mobil gas station shortly after 6:00 p.m. and took video surveillance. I have reviewed this video surveillance and it depicts a charcoal gray BMW pull into the gas station behind the red Mustang. The video surveillance shows the CI getting into the charcoal gray BMW. The video surveillance shows that the driver of the charcoal gray BMW is male black. The video surveillance shows the driver's distinctive profile and his braided hairstyle. Based on my review of the video and COOPER's CLEAR photo, the driver of the BMW was COOPER.

19.  The UC called out the temporary license plate number on the gray BMW to the ATF agents who were conducting surveillance. The number called out, "290H98_", was missing the last digit. ATF agents tried the incomplete number, "290H98_," in combination with numbers 1 through 9 as the last digit. Only one of these numbers, 290H987, is registered to a BMW. The number 290H987 is the temporary license plate number of a 2003 BMW registered to Kenyatta COOPER, 6647 S. St. Lawrence Avenue, Chicago, Illinois, 60637.

6

20.  Based on the foregoing, I believe there exists probable cause to believe that COOPER

committed violations of Title 21, United States Code, Section 841(a)(1).

Further affiant sayeth not.

_____

Cindy M. Bernd
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn before me
this 6th day of December, 2007

_____

Hon. Nan R. Nolan
United States Magistrate Judge

7